UNITED STATES DISTRICT COURT
FOR THEEASTERN DISTRICT OF LOUISIANA

TYLER MICHAEL CROCHET,                    Div.  _____

     Plaintiff,

v.                                                        Case No. _2:26-cv-927_____

NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,

     Defendant.

## CIVIL COMPLAINT FOR DAMAGES AND OTHER RELIEF

1. COMES NOW, Plaintiff, Tyler Michel Crochet (hereinafter "Plaintiff" or "Mr. Crochet"), by and through undersigned counsel to submit this civil complaint against Nationstar Mortgage LLC, d/b/a Mr. Cooper (hereinafter "Nationstar", "Mr. Cooper" or "Defendant") for violations of the Real Estate Settlement Procedures ACT ("RESPA"), 12 U.S.C. § 2605, and damages forthwith, including but not limited to: (1) Failing to timely acknowledge qualified written request(s) ("QWR"); (2) failing to timely reply to QWR(s); (3) failing to property address QWRs; and (4) failing to properly and/or timely disburse tax payments from managed escrow account resulting in the tax sale of Plaintiff's home.

### PLAINTIFF

2. Plaintiff is Mr. Crochet an individual who, at all material times to this action, was a natural person residing in Ponchatoula, Louisiana.

## DEFENDANT

3. Defendant is Nationstar, a nationwide mortgage servicer who, at all material times to this action, was a juridical person, whose principal place of business is Coppell, TX, who is incorporated in Wilmington DE, and whose officers both reside in Coppel, TX. Nationstar was the mortgage servicer responsible for overseeing Mr. Crochet's escrow account and disbursements thereto.

4. RESPA applies to any "Federally related mortgage loan" which includes those for liens on real property for a single-family home and "is made in whole or in part by any lender that is [. . .] regulated by [. . .] any agency of the Federal Government." 12 U.S.C. § 2602(1). The loan at issue is such a "federally related mortgage loan".

5. Defendant is subject to RESPA as a mortgage servicer—a person "responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). Under RESPA, "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

## JURISDICTION and VENUE

6. Jurisdiction for this matter arises under Federal Question Jurisdiction, 28 U.S.C. § 1331, specifically for Defendant's violations of the Real Estate Settlement Procedure ACT (RESPA), 12 U.S.C. § 1205.

7. Venue is proper in this district under 28 U.S.C. § 1391(b), because Defendant conducts business in this district, and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

8. Mr. Crochet is a first-time homebuyer, having purchased his home located at 22160 S. Ridge Dr., Ponchatoula LA 70454 (hereinafter the "Property") in 2022. The Property is located in Tangipahoa Parish.

9. Mr. Crochet paid his own property taxes for Tangipahoa Parish (Assessment # 6212891) for the 2023 tax year, misunderstanding that he had an agreement with his loan servicer to pay for same via escrow.

10. Defendant also paid property taxes for the Property for 2023, and 2024, but did so to the incorrect property (Assessment #6212867), and did not actually pay property taxes for Mr. Crochet's Property.

11. In December 2024, Mr. Crochet had a telephone conversation with a representative of Defendant, confirming that Defendant would be paying property taxes for the 2024 tax year. Mr. Crochet therefore did not issue payment as he had done previously to the Tangipahoa tax authority.

12. In July 2025, after receiving a Notice of Tax Sale—indicating that taxes were not paid for Mr. Crochet's property—Plaintiff again spoke to a representative of Defendant. That representative assured Plaintiff that taxes were being paid from his escrow account.

13. Mr. Crochet confirmed via email with the Tangipahoa Parish Assessor's Office that taxes were indeed not paid for the Property and that same was sold at a tax sale on June 25, 2025.

14. On July 25, 2025, Mr. Crochet sent a notice of error in a qualified written request (QWR) via email to Defendant, identifying his loan number (60591278), name and property address, along with confirmation that the Property was sold at tax sale due to property taxes not being paid.[1]

15. Mr. Crochet followed up to the QWR via email on July 31, 2025, August 07, 2025, and August 09, 2025, seeking additional updates and information.

16. On August 18, 2025, Mr. Crochet again sent an email via the original QWR email chain to Defendant, indicating that—after his own investigation—Defendant had been erroneously paying property taxes on the wrong parcel (Assessment #6212887).

17. On August 20, 2025, Mr. Crochet yet again sent an email via the original QWR email chain to Defendant, attaching documents further confirming that taxes had not been paid on the Property by Defendant, and that the Property had been sold at a tax sale (same indicating the redemption payment with associated fees, costs and penalties).

18. Defendant did not reply or acknowledge Mr. Crochet's original QWR on July 25, 2025, or any of the follow ups to same.

---

[1] Mr. Crochet sent this to oscorrespondence.ctax@corelogic.com, where tax bills are instructed to be sent by Mr. Cooper, and documents@mrcooper.com which also receives electronic copies of documents and correspondence related to loan accounts for Mr. Cooper.

19. On August 22, 2025, Mr. Crochet paid his 2024 taxes, penalties, costs and fees in order to "redeem" his property from the tax sale.

20. Mr. Crochet, via undersigned counsel, sent an additional QWR to Defendant on August 25, 2025.[2] Therein details were provided, again, that Defendant had the wrong tax assessment ID, was paying incorrectly from Plaintiff's escrow account, that Plaintiff's Property was sold at a tax sale, and made a number of requests for information as to Defendant's actions in determining what was done to investigate or address his concerns, as follows:

- Full accounting of his escrow account showing collection and disbursements of property taxes Mr. Cooper alleges were paid for the Property;

- All documents and information, written and/or electronic, showing the determination of the Property's Tax ID;

- All communications, written and/or electronic, with the Tangipahoa Parish Assessor's Office concerning the Property including but not limited to tax notices and tax delinquency letters; and

- All internal documents, written and/or electronic, showing communications with Mr. Crochet involving the Property and payment of property taxes.

21. Plaintiff, via undersigned counsel, was able to contact Defendant via customer service representatives twice in the interim to discuss the issue with the tax assessment number being incorrect, the incorrect payments from escrow, and the monetary loss resulting from the tax sale, but no immediate remedy was seen.

---

[2] This was also sent to documents@mrcooper.com and via certified mail to "Mr. Cooper" at their designated mailing address: PO Box 619098, Dallas, TX 75261.

22. Defendant, in correspondence dated September 22, 2025, acknowledged receipt of the QWR dated August 25, 2025.

23. Defendant, in correspondence dated October 30, 2025, provided a "RESPA RESPONSE TO NOTICE OF ERROR" attaching transaction history of Plaintiff's escrow account.

24. Defendant did also reimburse Claimant, as acknowledged in the correspondence, for $2,812.70 via his escrow account for the incorrect tax payments for 2023, Mr. Crochet's forced tax payment for 2024 on October 23, 2025, and allegedly made the corrections to the tax assessment number for the Property.

25. Defendant, however, did not reimburse Mr. Crochet for the penalties and costs associated with the tax sale that resulted from Defendant's mishandling of his escrow account. Further, Defendant did not provide any documents or other information that was requested by Plaintiff to show how Defendant determined the property tax assessment number, communications with the Tangipahoa Tax Assessor's office, or other such relevant documents.

26. Instead, Defendant alleged that the loan was "boarded with an incorrect parcel number . . . due to the client providing incorrect legal information at the time of boarding." Further, without providing any proof of where the information was received, Defendant claimed "[t]he correct legal information was provided later, on August 27, 2025[.]"

27. Mr. Crochet endured the stress and actual monetary loss in having his home sold at a tax sale due to Defendant's mismanagement of his loan account and escrow

account, but Nationstar shifted the blame to him without providing any documentation, proof or otherwise of how it determined this "boarding" error. Nationstar also did not clarify the source of the information on how it corrected the error.

28. On review of the original mortgage document for the Property, the correct parcel/tax ID was listed as 6212891, in direct contravention to Defendant's statement(s). Again, Defendant did not disclose who provided the erroneous information to them concerning the parcel/tax/assessment ID.

## RESPA VIOLATIONS

### Count I – *Property Tax Payment Violation(s)*

29. Section 5(g) of RESPA,   and(g), states that "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due."

30. The requirements of Section 5(g) are further explained in Regulation X, 12 C.F.R. § 1024.17(k)(1), which states, among other requirements: "[i]f the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue."

31. Among other obligations, Section 17 of Regulation X requires servicers to disburse property tax payments in a timely manner, 12 C.F.R. § 1024.17(k)(1).

32. The allegations of Paragraphs 1-28 are incorporated by reference.

33. Defendant failed to make timely payments for the 2023 and 2024 tax years. Because of its own negligence Defendant was paying them to the wrong property, resulting in penalties, fees and the tax sale of Mr. Crochet's home.

34. Defendant failed to make corrections and reimburse Mr. Crochet's account until months after Mr. Crochet notified them and did not compensate him for the penalties/costs incurred associated with the tax sale resulting from Defendant's own mishandling of the account.

35. These failures are a direct violation of RESPA and the associated administrative codes.

### Count II – *Failure to Timely Respond to First QWR*

36. Section 5(e) of RESPA, 12 U.S.C. § 2605(e), governs the duty of a loan servicer to respond to borrower inquiries.

37. Under Section 5(e)(1), a QWR is "a written correspondence" that enables the servicer to identify the name and account of the borrower, and includes a statement of the reasons for the belief of the borrower that an account is in error "or provides sufficient detail to the servicer regarding other information sought by the borrower."

38. A loan servicer has 5 business days to acknowledge receipt of the correspondence, and no later than 30 business days provide a response either by issuing corrections or providing some form of written explanation.

39. The allegations of Paragraphs 1-28 are incorporated by reference.

40. Defendant did not timely acknowledge or respond to the QWR sent by Mr. Crochet via email on July 25, 2025, which identified his first and last name, loan ID number, and seeking assistance concerning his property taxes not being paid.

41. This QWR was sent as a follow up to a phone conversation with a customer service representative of Defendant—wherein said representative assured Mr. Crochet that the property taxes were paid. Further, on information and belief, the email addresses Mr. Crochet used were supplied by the representative.

42. Mr. Crochet, through undersigned counsel, had to send a second QWR to address his ongoing concerns and, in the interim, had to pay additional costs in "redeeming" the Property after the tax sale, as well as suffered emotional duress in the process of investigating the failure and enduring the impact of having his property sold at tax sale.

43. These failures are a direct violation of RESPA and the associated administrative codes.

Count III – <em>Failure to Properly Adress the Second QWR</em>

44. The allegations of Paragraphs 35-36 are incorporated by reference.

45. Section 38 of Regulation X also requires that a servicer maintain "[a]ny notes created by servicer personnel reflecting communications with the borrower about

the mortgage loan account[,]" 12 C.F.R. § 1024.38(c)(2)(iii), as well as records of "document actions" with respect to a borrower's mortgage account, 12 C.F.R. § 1024.38(c)(1).

46. Section 36 also governs requests for information from the borrower, which encompasses requests for documents, 12 C.F.R. § 1024.36.

47. Further, Section 35 of Regulation X governs procedures specifically in regards to notices or error sent by a borrower to a servicer, 12 C.F.R. § 1024.35. A servicer "shall provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 [business days] of receiving the borrower's request for such documents [,]" per 12 C.F.R. § 1024.35(e)(4).

48. The allegations of Paragraphs 1-28 are also incorporated by reference.

49. Mr. Crochet, via undersigned counsel in the second QWR, requested specific documents and information concerning how Mr. Cooper determined his property tax ID, and communications with the Tangipahoa tax authority to determine how the error occurred to ensure it was addressed appropriately and/or how same was handled prior to the second QWR being sent.

50. Defendant not only failed to provide documents pertaining to Mr. Crochet's request under Section 36 but also did not comply with Section 35 of Regulation X in failing to provide requested documents when determining that no error occurred in regard to the incorrect tax assessment number.

51. Defendant, in its correspondence, simply stated that "no error occurred" and claimed the escrow documents showing transaction history was sufficient to show it had done its investigation—despite claiming incorrect boarding documentation was provided and ignoring Mr. Crochet's other concerns.

52. As a result of Defendant's actions, Mr. Crochet still suffered economic loss with having to pay penalties/fines/costs associated with "redeeming" his property after the tax sale, as well endured additional economic loss, embarrassment and mental duress  in having to conduct his own investigation(s) into the tax ID number, communicating with the Tangipahoa tax authority, and speaking to his neighbors who were the ones receiving tax payments to their property from Defendant.

53. These failures are a direct violation of RESPA and the associated administrative codes.

Count IV – <em>Pattern and Practice of Violations</em>

54. The allegations of Paragraphs 1-53 are incorporated by reference.

55. Defendant has shown a clear pattern of negligence either through internal breakdown of policy, poor procedure in securing and setting up loan accounts after transfer and otherwise in addressing borrower concern(s)—resulting in mishandled escrow payments for Mr. Crochet over a period of 2 years and ultimately resulting in the tax sale of the Property.

56. On information and belief, Nationstar has been involved in numerous other cases of escrow mismanagement across the country, including cases involving misapplied tax payments and missed tax payments.

57. Defendant, by its own admission, stated a boarding error (without any relevant documentation provided) caused them to establish tax payments from escrow to the wrong property. This is despite proof that Mr. Crochet's original mortgage document identified the correct tax assessment/parcel number for the Property.

58. Defendant failed to respond to Mr. Crochet's initial QWR, forcing him to deal with the tax sale on his own and "redeem" the Property.

59. Defendant failed to appropriately respond to Mr. Crochet's second QWR and did not address the documents or other information concerning their handling of his escrow account, identification of the property tax assessment number and origination of the error causing the mishandling of the escrow account in the first place.

60. Defendant's violations of RESPA and the associated administrative codes in this matter, as well as the belief it has committed these violations prior and nationwide, indicates a clear pattern and practice of violations.

### PRAYER FOR RELIEF

Mr. Crochet respectfully requests this Honorable Court:

1. Issue an Order finding that Defendant is in violation of RESPA and corresponding administrative codes under Regulation X;

2. Award damages to compensate Mr. Crochet for the losses he suffered as a result of Defendant's violations of RESPA;

3. Award statutory damages to Mr. Crochet for each violation of RESPA;

4. Award attorney fees and costs against Defendant;

5. Award penalties as appropriate against Defendant; and

6. Award additional relief as the Court may deem just and proper.

DATED: __05/01/2026_____

Respectfully submitted,

_/s/ Robert H. Smith_____
ROBERT H. SMITH (LA. Bar No. 38411)
FRONTLINE LAW FIRM LLC
2315 Florida St., Bldg. 200, Ste. 284
Mandeville, LA 70448
TEL: 985-377-9566
FAX: 985-612-8028
EMAIL:     rhs@frontlinelaw.net
COUNSEL FOR PLAINTIFF